**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOSE GARCIA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LATOYA HUGHES,**<br>**JEFFREY WEHKING,**<br>**C/O BEEL,**<br>**C/O MEYER,**<br>**TRAVIS M. MEYER,**<br>**JUSTIN R. BILLINGTON, and**<br>**LT. THOMPSON,**<br><br>**Defendants.** | **Case No. 25-cv-01424-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Jose Garcia, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Centralia Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights, federal statutory law, and state law. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE FIRST COMPLAINT

Plaintiff states that he has been incarcerated since 1999. (Doc. 15, p. 9). In 2000, his mother gave him a cross necklace, described as a 24-inch 14k gold chain with a 14k gold cross pendant.

(*Id.*). Plaintiff alleges that the chain and cross are religious relics and were blessed in accordance with Plaintiff's Catholic faith. (*Id.*). After he was gifted the necklace, he used the necklace daily for prayer and religious observances. (*Id.*). Under IDOC policy, the necklace was deemed "approved personal religious property." (*Id.*). Plaintiff states that whenever he was transferred to a new facility, the necklace was inventoried and transferred along with other personal property items. (*Id.*).

On January 22, 2025, Plaintiff transferred from Graham Correctional Center (Graham) to Centralia Correctional Center (Centralia). (Doc. 15, p. 9). According to Plaintiff, prior to his transfer, the necklace was taken from him, inventoried, sealed in a box, and shipped to Centralia. (*Id.*). After his arrival at Centralia, Correctional Officer Meyer, a property officer, informed Plaintiff that the necklace had been sent to the chaplain for approval and permitting. (*Id.*).

Plaintiff waited over a month, and when he did not receive an update on the status of his cross necklace, he sent a request slip to personal property and to the chaplain. (Doc. 15, p. 10). Plaintiff claims that he did not hear back from either request. (*Id.*). Plaintiff's brother called Centralia on March 10, 2025, and spoke to Counselor Travis Meyer about the cross necklace. (*Id.*). Plaintiff alleges that Travis Meyer told his brother that the matter would be investigated. (*Id.*).

At some point, Travis Meyer informed Plaintiff that he had been told by Correctional Officer Beel, a property officer, that no cross necklace had been received by Centralia. (Doc. 15, p. 10). In response, on March 12, 2025, Plaintiff submitted a grievance about the loss of his cross necklace, and he filed a FOIA request seeking copies of his personal property records. (*Id.*). Plaintiff's brother also contacted the governor's office about the situation. (*Id.*). According to the allegations in the First Amended Complaint, the governor's office response confirmed that the property records from Graham "showed the religious chain was inventoried and transferred with Plaintiff's property." (*Id.*). However, according to the governor's letter provided with the First

Amended Complaint as an exhibit, the property officer at Graham reported that although the property sheet from Graham indicates that Plaintiff possessed a chain and cross, "he never received a chain and cross from their transfer team, and it was not in [Plaintiff's] property when he arrived at Centralia." (*Id.* at p. 21).

On June 10, 2025, Plaintiff received a final response to his grievance from the Administrative Review Board. (Doc. 15, p. 10). The Administrative Review Board reimbursed Plaintiff for the lost necklace in the amount of $50.00. (*Id.* at p. 26).

On October 8, 2025, Plaintiff was called to Internal Affairs and met with Lieutenant Thompson. (Doc. 15, p. 11). Thompson asked Plaintiff if he had written a letter to the Illinois State Police, Division of Internal Investigation regarding the confiscated necklace. (*Id.*). Thompson admitted that there were bad officers at Centralia but expressed his belief that Correctional Officers Beel and Meyer were good officers and would not have taken the necklace. (*Id.*). Thompson then typed a report for Plaintiff to sign, but Thompson refused to give Plaintiff a copy. (*Id.*).

Plaintiff had a second meeting with Thompson the following day. (Doc. 15, p. 11). Thomspon gave Plaintiff a response from DII Southern Commander Natasha Lawson to his Illinois State Police complaint. (*Id.* at p. 11, p. 15). In the response, Lawson advised Plaintiff that IDOC Internal Affairs had advised that an investigation had already been conducted and the allegations were deemed unsubstantiated, and therefore, the Division of Internal Investigation would not take further action. (*Id.*). Plaintiff was unsatisfied with this response. (*Id.* at p. 11). He states he then wrote to Lawson outlining how the investigation was biased. (*Id.*). Plaintiff did not receive a response from the letter. (*Id.*).

## **Discussion**

Plaintiff has not cured the deficiencies of his original Complaint, and the First Amended Complaint fails to state any claim under constitutional or federal statutory law for the theft of his

necklace.

The Court dismisses Plaintiff's claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act (Counts I and II). As alleged in the original Complaint, Plaintiff again claims that his cross necklace, which he uses for prayer as part of his Catholic faith, was stolen when he transferred to a new correctional facility. (Doc. 15, p. 9). Plaintiff asserts that without his necklace he suffers spiritual, emotional, and physical distress, and the practice of his Catholic faith has been substantially burdened. (*Id.* at p. 11). Plaintiff does not, however, claim that he was or is prohibited from obtaining another cross necklace or rosary, and so it is not clear how he is being prevented from practicing his religion. *See also Hines v. Ferguson*, No. 19-CV-3139, 2019 WL 4772215, at *5 (E.D. Pa. Sept. 27, 2019) (observing that because the plaintiff failed "to assert that he is unable to practice his religion through alternative means even though he no longer has access to specific religious property that was destroyed in the transfer, his First Amendment claim is not plausible"). As the Court previously held, the fact that an object of religious character was stolen "does not support a plausible claim absent a burden on the exercise of his religions." (Doc. 14, p. 5) (quoting *Adams v. Corr. Emergency Response Team*, No. 19-CV-3301, 2020 WL 1450857, at *2 (E.D. Pa. Mar. 24, 2020)). Plaintiff "cannot resurrect his property claim simply by characterizing the [cross necklace] as 'religious property' without alleging that his religious observance was unreasonably restricted." *O'Banion v. Anderson*, 50 F. App'x 775, 776 (7th Cir. 2002). *See also Carr v. Zwally*, 760 F. App'x 550, 555 (10th Cir. 2019); *Griffin v. Wetzel*, No. 19-CV-2232, 2020 WL 3871080, at *3 (E.D. Pa. July 9, 2020). For these reasons, Plaintiff claims under the First Amendment and RLUIPA are dismissed.

Plaintiff's Fourteenth Amendment due process claim also fails (Count III). As the Court previously explained, "[t]o state a property loss claim under the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property without due process of law. If the state provides

an adequate remedy, however, Plaintiff has no civil rights claim." (Doc. 14, p. 3) (citing *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984)). Because Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims, Plaintiff must pursue any property loss claim in that forum, regardless of whether the conduct, which was allegedly in violation of IDOC policies and procedures, was negligent or intentional. *See Turley v. Rednour*, 729 F.3d 645, 653 (7th Cir. 2013) (citing 705 ILCS 505/8(a) and (d)). Plaintiff's Fourteenth Amendment due process claim is dismissed.

Plaintiff also cannot proceed under the Eighth Amendment (Count V). Plaintiff states that confiscation of the necklace resulted in ongoing spiritual, emotional, and physical distress causing unnecessary and wanton infliction of distress. (Doc. 15, p. 12). The Court still finds that in "no way could the theft of a single personal item 'rise to the level of cruel and unusual punishment.'" (Doc. 14, p. 4) (quoting *Washington v. Salamon*, No. 4:23-CV-01659, 2023 WL 7004434, at *2 (M.D. Pa. Oct. 24, 2023) (dismissing the complaint where the plaintiff alleged loss of his property during his transfer between correctional institutions)). *See also Eichwedel v. Roth*, No. 91 C 3461, 1995 WL 66353, at *3 (N.D. Ill. Feb. 9, 1995) (the Eighth Amendment offers no relief for the loss of property). Accordingly, Plaintiff's Eighth Amendment claim is dismissed.

The Court dismisses Plaintiff's retaliation claim (Count VII). He claims that Lieutenant Thompson retaliated against him for filing an institutional grievance and complaints with the governor's office and state police, (Doc. 15, p. 13), but he does not describe the conduct or deprivation that he believes was retaliatory on the part of Thompson. Accordingly, Plaintiff's retaliation claim fails.

For the first time Plaintiff asserts a *Monell* claim stating that Defendants' failure to train, supervise, and ensure mandatory policies and procedures were followed resulted in the confiscation of his religious property (Count IV). (Doc. 15, p. 12). However, a Section 1983

policy/practice/custom claim brought pursuant to *Monell* may only proceed against a local government unit, not individuals. *See Phillips v. Baxter*, 768 F. App'x 555, 560 (7th Cir. 2019). Likewise, "failure to train claims are usually maintained against municipalities, not against individuals." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005). Additionally, because Plaintiff's constitutional claims regarding the confiscation of his necklace have been dismissed (Counts I, III, V, and VII), there can be no failure to train or failure to supervise claims. *See Windle v. City of Marion, Ind.*, 321 F.3d 658, 663 (7th Cir. 2003). Plaintiff's *Monell* claim is therefore dismissed.

And finally, because Plaintiff has failed to state a viable claim under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for intentional infliction of emotional distress (Count VI). Plaintiff's intentional infliction of emotional distress claim is dismissed.

Plaintiff has failed to state a constitutional claim against any named defendant, and therefore, the First Amended Complaint does not survive screening under 28 U.S.C. § 1915A and shall be dismissed. When a complaint fails to state a claim upon which relief may be granted, the plaintiff is ordinarily given an opportunity to amend the complaint in order to correct the deficiencies. *See* FED. R. CIV. P. 15(a). However, leave to amend need not be granted if it is clear that any amendment would be futile. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994). This is Plaintiff's second attempt to state a claim, and he again is unsuccessful. Accordingly, the Court finds that any further amendment of Plaintiff's claims in this action would be futile. The dismissal of this case will be with prejudice and without leave to amend.

## DISPOSITION

For the reasons stated above, the First Amended Complaint (Doc. 15) and this entire action

are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. The Court considers the dismissal of this action as a "strike" under 28 U.S.C. § 1915(g).

The Motion for Status and the Motion to Correct are **DEEMED moot** in light of this Order. (Doc. 16, 17).

Plaintiff may appeal this Order by filing a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If he does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725–26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858–59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 30, 2026**



**STEPHEN P. MCGLYNN**
**United States District Judge**